**JACOBSON LAW FIRM**
570 N. Columbus Blvd., Suite B
Tucson, Arizona 85711
Telephone (520) 834-8034
Facsimile (520) 844-1011
jeff@jacobsonlawfirm.net
Jeffrey H. Jacobson, State Bar No.: 019502
Alexis B. Sharpe, State Bar No.: 034177
*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cherokee Shafer,<br><br>Plaintiff,<br><br>v.<br><br>Hospital Housekeeping Systems, LLC.,<br>a foreign limited liability company;<br>ABC Corporations; XYZ Partnerships;<br>123 LLCs; and John/Jane Does, 1-10.<br><br>Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>**(Jury Trial Requested)** |

Plaintiff Cherokee Shafer (Plaintiff or Ms. Shafer) through undersigned counsel, for her Complaint against the Defendant, alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. For all times relevant to this Complaint, Ms. Shafer is female, domiciled in Cochise County, Arizona.

2. Defendant Hospital Housekeeping Systems, LLC (Defendant or HHS), is a foreign limited liability company, headquartered in Texas, doing business in Arizona.

3. ABC Corporations; XYZ Partnerships; 123 LLC; and John/Jane Does, 1-10, are fictitious entities or person who are equally responsible as defendants for the acts alleged herein, but whose identity is currently unknown to Plaintiff. When and if the identities of

these entities becomes known, Plaintiff will amend the caption of this action to reflect that knowledge.

4. Ms. Shafer brings this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*

5. The events and actions complained of below occurred in Sierra Vista, Arizona (Cochise County).

6. At all relevant times, Defendant was a covered employer under Title VII of the Civil Rights Act and employed Ms. Shafer.

7. This Court has jurisdiction pursuant to 28 U.S.C. §1331 (federal question) and 28 U.S.C. § 1343 (jurisdiction over civil rights cases). This Court has personal jurisdiction over Defendant because, at all times relevant, Ms. Shafer worked for Defendant in Sierra Vista, Arizona.

8. Venue is proper pursuant to 28 U.S.C. § 1391 because Ms. Shafer worked for the Defendant in Sierra Vista (Cochise County), Arizona, and all or a substantial part of the events or omissions giving rise to the claims occurred within the jurisdiction of the District of Arizona.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

9. On April 12, 2021, Ms. Shafer timely filed a Charge of Discrimination with the Office of the Arizona Attorney General, Civil Rights Division (ACRD), case number CRD-2021-0367, which was concurrently filed with the Equal Employment Opportunity Commission (EEOC) pursuant to their workshare agreement, EEOC case number 35A-2021-00283C.

10. On or about January 13, 2022, ACRD mailed its Notice of Right to Sue to undersigned counsel's former business address. Exhibit A.

11. This Complaint was filed within 90 days of the receipt of the ACRD's Notice of Right to Sue letter.

//
//
//

# FACTS

12. HHS offers housekeeping, culinary, linen management, facilities management, patient transportation, clinical engineering, and patient flow technology for healthcare facilities, senior living communities and the hospitality industry.

13. Canyon Vista Medical Center (CVMC) in Sierra Vista, Arizona (Cochise County) contracted with HHS to provide housekeeping and other services at CVMC.

14. On or about June 13, 2018, HHS hired Ms. Shafer as a housekeeper at CVMC.

15. For all times relevant to this Complaint, Ms. Shafer was a lead housekeeper, part of the Environmental Services/Healthcare Department/Service Line, at CVMC.

16. As a housekeeper, Ms. Shafer cleaned patient rooms, hospital bathrooms, and around the hospital.

17. Initially, Ms. Shafer's immediate supervisor was Maria Chandler.

18. Around March or April 2019, HHS promoted Ms. Shafer to the role of lead housekeeper.

19. At that time, William Redman was Ms. Shafer's supervisor.

20. HHS promoted Ms. Shafer because she took initiative, cared about her staff members, and had an excellent relationship with the nurses.

21. As a lead housekeeper, Ms. Shafer was responsible for managing approximately 10 housekeepers per shift. Ms. Shafer was the first to respond to major issues such as bed bugs or a major spill.

22. HHS employee Anthony Ragland started working at CVMC in or about November 2020 as the Environmental Services Director.

23. When Mr. Ragland started working at CVMC, he became Ms. Shafer's immediate supervisor.

24. During her employment with HHS, Ms. Shafer alternated between day and night shifts. For all times relevant to this Complaint, Ms. Shafer was working the 11:00 p.m. to 7:30 a.m. shift.

//

25. HHS has an "Open Door" policy which states, in relevant part:

> HHS encourages team members to bring concerns, complaints, or ideas about work-related issues to the attention of management. In order to aid in prompt and constructive problem solving, team members shall be provided the opportunity to present such information through our Open Door Policy. . . . Should your immediate supervisor not resolve the problem, then you should next contact the HHS Austin Office via the OneTeam Helpline.

26. HHS's policies also prohibit "Use of loud or offensive language," "Immoral conduct or indecency," and "Threatening, intimidating, coercing, or interfering with fellow team members on facility premises."

27. HHS also has policies prohibiting sexual harassment and engaging in any form of harassing, discriminatory, or retaliatory conduct, including hostile work environment harassment.

28. In or about the beginning of December 2020, Mr. Ragland began harassing, discriminating against Ms. Shafer on the basis of her sex, and creating a hostile work environment.

29. On one occasion, Mr. Ragland inserted himself in a private conversation Ms. Shafer and her colleague, Victoria Dutcher, were having about dating. Mr. Ragland said, "So you guys are in relationships? Are you getting satisfied? Do you use lubrication? If you do that then how would you get satisfied?" or words to that effect, and asked whether Ms. Shafer engaged in oral sex with her boyfriend.

30. During the same occasion, Mr. Ragland also said, "If you weren't satisfied, the right guy will come whisper in your ear, and you will cheat on your boyfriend. Never say never, and when you do you will come to me" or words to that effect.

31. Ms. Shafer responded to Mr. Ragland, saying, "No I do not agree with you, I am not that type of person, and I do not agree with you" or words to that effect.

32. Mr. Ragland responded that he "was trying to tell you how life works and that is just how life happens," or words to that effect.

//

//

33. Ms. Shafer told Mr. Ragland that his statements were upsetting her. This marked only the beginning of Mr. Ragland's harassing, discriminatory pattern of behavior against Ms. Shafer.

34. Starting in December 2020, Mr. Ragland began staying several hours during Ms. Shafer's night shift.

35. Before the start of nearly every shift, Mr. Ragland would require Ms. Shafer and her colleague to engage in what he termed "girl talk."

36. Mr. Ragland also used his position of authority to pretend that Ms. Shafer and/or her co-worker, Ms. Dutcher made a mistake so he could get them alone. When they were alone, Mr. Ragland would say that he was joking, asked them "so what is going on in your lives," and said that he simply wanted to engage in "girl talk."

37. In these forced, practically daily conversations, Mr. Ragland shared inappropriate personal information including that he was a sex addict, liked hairy women, likes blondes and brunettes, and discusses threesomes with his friends. He also asked Ms. Shafer about oral sex. Ms. Shafer said that "she did not like that kind of stuff" and that it was "weird."

38. Ms. Shafer was scared to respond to Mr. Ragland, and his behavior negatively impacted Ms. Shafer's work environment.

39. In the last week of December, Mr. Ragland supposedly became frustrated about a fly in the chapel. Mr. Ragland asked Ms. Shafer if she dusted the chapel. When Ms. Shafer explained that she had dusted the chapel, Mr. Ragland called Ms. Shafer a liar. He claimed that if she had dusted the chapel, the fly would have been gone. He then said he was "only kidding." He also said that he was actually upset with the prior shift of housekeepers, and that Ms. Shafer was a "good sport" and would "just take it."

40. The same week as the "fly" incident, Mr. Ragland pressured Ms. Shafer to go motorcycle riding with him so they could "get to know each other." To avoid angering Mr. Ragland, and so she would not make any commitment, Ms. Shafer simply said that "motorcycle riding is fun" or words to that effect.

41. Mr. Ragland's pressure and inappropriate conduct did not cease. During one instance in January 2021, Ms. Shafer said she would cut her hair; Mr. Ragland then threatened to fire her if she cut her hair, and then make up an excuse to justify the termination.

42. In the second week of January 2021, Mr. Ragland again pressured Ms. Shafer to spend time with him outside of work. This time, Mr. Ragland proposed that Ms. Shafer take him out for the night and "show him around town." Ms. Shafer did not respond and tried to avoid committing without angering her direct supervisor.

43. Also in January 2021, three female housekeepers under Ms. Shafer's supervision reported to her that they were having similar issues with Mr. Ragland.

44. Ms. Shafer reported Mr. Ragland's conduct, including specific examples, to HHS Human Resources. According to HHS Human Resources, HHS already had an open investigation into Mr. Ragland's conduct. Ms. Shafer was assured that she would be contacted once the investigation concluded.

45. Ms. Shafer never received a call from human resources, or any further communication regarding HHS's pending investigation into Mr. Ragland's inappropriate conduct.

46. After Ms. Shafer's report to HHS Human Resources, Mr. Ragland's conduct changed. She did not see Mr. Ragland as frequently. One day when Ms. Shafer clocked in, Mr. Ragland told her she needs to start working immediately, wear proper uniforms, and work scheduled days even if she is sick. Otherwise, Mr. Ragland virtually stopped talking to Ms. Shafer and showing up on her shifts.

47. On January 25, Mr. Ragland's supervisor, Brian Harms, asked Ms. Shafer about Mr. Ragland under the guise of wanting an update on Mr. Ragland's performance.

48. Ms. Shafer told Mr. Harms about Mr. Ragland's inappropriate conduct, with specific examples and the fact that multiple women had come forward to her with the same complaints.

49. Mr. Harms appeared surprised. He said that Mr. Ragland is a good guy, he trained Mr. Ragland, and that they are friends. He also promised to look into Ms. Shafer's claims.

50. On January 28, 2021, Ms. Shafer and Ms. Dutcher spoke with Travis, the lead for Environmental Services Security and Maintenance. Ms. Shafer approached Travis because he was a level of supervision higher than Mr. Ragland. Ms. Shafer and Ms. Dutcher told Travis the same things that Ms. Shafer had told Human Resources and Mr. Harms and disclosed that she had already reported these incidents to them. Travis promised to start an investigation and communicate with Mr. Harms.

51. That evening, Ms. Shafer was brought into an office with two male security guards, Mr. Ragland, and a male housekeeper. Mr. Ragland called Mr. Harms and put him on speakerphone. Mr. Harms said, "Ok, Cherokee, the investigation has been completed and your director wants to terminate you for false accusations and spreading rumors around the hospital and creating a hostile workplace," or words to that effect. Ms. Shafer responded that she did not spread rumors and had only reported Mr. Ragland's conduct. Mr. Harms then said that the "victim" wanted to terminate her.

52. Ms. Shafer was handed a Team Member Counseling Memo indicating that she was terminated. In the section marked 'Reason for the counseling,' the memo accused Ms. Dutcher (not Ms. Shafer) of violations of Rules 29 and 50.

**COUNT ONE**
**(Disparate Treatment Discrimination in Violation of**
**Title VII of the Civil Rights Act of 1964, as Amended)**

53. Ms. Shafer incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein.

54. Defendant's actions as alleged constitute discrimination on the basis of gender in violation of Title VII, specifically 42 U.S.C. § 2000e-2(a).

55. Defendant intentionally discriminated against Ms. Shafer and acted with malice or with reckless indifference to Ms. Shafer's federally-protected rights.

56. The effect of the allegations in the foregoing paragraphs has been to deprive Ms. Shafer equal employment opportunities and otherwise adversely affected her status as an employee, because of her gender.

57. As a result of Defendant's discrimination, Ms. Shafer has suffered damages including, without limitation, loss of wages and associated benefits, emotional distress, mental anguish, and loss of enjoyment of life for which she should be compensated in an amount to be determined at trial pursuant to 42 U.S.C. § 2000e *et seq*.

## COUNT TWO
### (Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as Amended)

58. Ms. Shafer incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein.

59. Pursuant to 42 U.S.C. § 2000e-3 *et seq.*, it is an unlawful employment practice for an employer to discriminate against any of its employees because the employee opposed any practice that is an unlawful employment practice and/or participated in a protected activity, such as lodging a sexual harassment complaint against their supervisor.

60. Defendant's actions as alleged constitute discrimination on the basis of gender in violation of Title VII, and specifically 42 U.S.C. § 2000e-3 *et seq.*

61. As a result of Defendant's unlawful retaliation, Ms. Shafer has suffered monetary damages for which she should be compensated in an amount to be determined at trial pursuant to 42 U.S.C. § 2000e *et seq*.

## COUNT THREE
### (Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964, as Amended)

62. Ms. Shafer incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein.

63. Ms. Shafer's workplace was so permeated with the discriminatory acts described above, and the conduct of Defendant and its employees was severe and pervasive such that it created a hostile, abusive, or offensive work environment or unreasonably interfered with Ms. Shafer's work performance.

64. Defendant is vicariously liable for the actions of its employees in this case.

65. As a result of Defendant's discriminatory, hostile work environment, Ms. Shafer has suffered damages including, without limitation, loss of wages and associated benefits, emotional distress, mental anguish and loss of enjoyment of life which she should be compensated in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against the Defendant as follows:

1. Declare that the Defendant violated the Plaintiff's rights under Title VII of the Civil Rights Act of 1964.

2. For actual damages;

3. For pecuniary and non-pecuniary compensatory damages in a just and reasonable amount;

4. For punitive damages in a just and reasonable amount;

5. For an Order directing the Defendant to take such measures as are reasonable and necessary to ensure that unlawful employment practices like those described above are eliminated and do not recur;

6. For Plaintiff's attorney's fees, costs, and expenses;

7. For such other and further relief as the Court deems reasonable and just.

## JURY TRIAL REQUESTED

Plaintiff requests that the Court set this case for a jury trial.

Respectfully submitted this 12th day of April, 2022.

**JACOBSON LAW FIRM**

*s/ Jeffrey H. Jacobson*
JEFFREY H. JACOBSON

*s/ Alexis B. Sharpe*
ALEXIS B. SHARPE
*Attorneys for Plaintiff*

Filed via the CM/ECF system this 12th day of April, 2022